UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 06-246-GWU


DAVID W. CALTON                                                    PLAINTIFF,


VS.                        **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


**INTRODUCTION**

The plaintiff brought this action  to obtain judicial review of an administrative

denial of his application for Disability Insurance Benefits (DIB).  The appeal is

currently before the Court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled.  If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
      claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities?  If yes, proceed to
      Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
      404.1520(c), 404.1521, 416.920(c), 461.921.

1

Calton

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Calton

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged

3

Calton

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Calton

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

Calton

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

Calton

physical and mental impairments.  <u>Varley  v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, David W. Calton, filed his current application for DIB on September 16, 2003, alleging disability beginning May 19, 1999 due to the back and knee pain, breathing problems, depression, and nervousness.  (Tr. 103-4).  An Administrative Law Judge (ALJ) concluded that Mr. Calton had "severe" impairments prior to his Date Last Insured (DLI) consisting of bilateral knee pain (status post arthroscopic surgery), degenerative disc disease, a depressive disorder, and an anxiety disorder.  (Tr. 18).  Nevertheless, based in part on the testimony of a vocational expert (TE), the ALJ determined that Mr. Calton retained the residual functional capacity to perform his past relevant work as a security guard and, therefore, was not entitled to benefits.  (Tr. 19-21).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to "light" level exertion, and also had the following non-exertional restrictions. He: (1) could not perform any climbing; (2) could occasionally kneel, squat, stoop, and crawl; (3) could have no concentrated exposure to pulmonary irritants; (3) was limited to no more than simple instructions and no work involving contact with the general public, although he could engage in superficial interaction with co-workers

Calton

and supervisors; and (4) could not perform production rate work.  (Tr. 372-4).  The VE responded that with these restrictions, the plaintiff could perform his past relevant work as a security guard and, in the alternative, named other jobs which could be performed in the national economy and proceeded to give their local and national numbers.  (Tr. 374-5).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.  Mr. Calton had filed a prior application for DIB which was denied in a previous ALJ decision on June 29, 2001 (Tr. 43-54), and affirmed by this Court on July 9, 2003 (Tr. 35-6). The ALJ in the present case applied res judicata through the date of the prior decision; additionally, Mr. Calton's DLI was June 30, 2002 (Tr. 13-14), meaning that he was required to show disability existing between those two dates in order to be entitled to benefits.

The medical evidence shows that in September, 2000, shortly before the relevant period, Mr. Calton's treating physicians obtained an MRI of the lumbosacral spine showing degenerative disc disease at L4-5 with a small protrusion.  (Tr. 275). The plaintiff referred himself to Dr. Farooq Ghory for an evaluation in August, 2001, and the physician found a restricted range of motion on examination of the back and that movements were performed with pain.  (Tr. 267-8).  However, Mr. Calton was able to walk on his heels and toes and perform squats, there were no neurological abnormalities, and Waddell's testing for symptom exaggeration was positive.  (Tr.

8

Calton

268).  Dr. Ghory diagnosed chronic back pain and prescribed medications, but suggested that the plaintiff follow-up with his family physician, Dr. Jose Echeverria. Office notes from Dr. Echeverria for the rest of the relevant period show that he continued to find tenderness on examination of the back, prescribed medications, and also successfully treated the plaintiff for a hiatal hernia with gastritis and positive H. pylori testing.  (Tr. 252-63).  No functional restrictions are given.  (E.g., Tr. 250).

The only physician to give functional limitations in connection with the current application was Dr. Kip Beard, who performed a consultative physical examination in July, 2005.  (Tr. 315).  His restrictions are largely consistent with the hypothetical question (Tr. 320), but the ALJ was under no obligation to follow them in view of the fact that the examination took place more than three years after the DLI and was not explicitly related to the period at issue.

Likewise, several mental status examinations were performed after the DLI, including a psychiatric evaluation by Dr. Kevin Eggerman in January, 2004 (Tr. 178-82), and psychological examinations by Reba Moore and James Leisenring in 2005 (Tr. 299-314).  The ALJ's functional restrictions were largely consistent with Dr. Eggerman's conclusions (Tr. 182), but, once again, none of these one-time examiners related their opinions to the relevant period.  The plaintiff did undergo some mental health treatment at a local Comprehensive Care Center (CCC) in 2002, and was given an initial diagnosis of a mood disorder due to chronic pain symptoms with a Global Assessment of Functioning (GAF) score of 55.  (E.g., Tr. 200).  A GAF

9

Calton

score in this range reflects moderate symptoms.  Diagnostic and Statistical Manual of Mental Disorders (4th Edition-Text Revision), p. 34.  In July, 2002, shortly after the DLI, his treating psychiatrist, Dr. E. Eskander, noted that Mr. Calton was reporting favorable response to his current medications and needed to continue with them and with supportive counseling; Vocational Rehabilitation was discussed at the same time.  (Tr. 199).  No functional restrictions were given.  A state agency psychologist, Dr. Jane Brake, who reviewed the record in 2004, completed a Psychiatric Review Technique Form stating that the plaintiff did not even have a "severe" impairment as of the DLI.  (Tr. 225, 237). This was the only opinion from a professional source regarding mental restrictions that was specifically related to the period before the DLI. Therefore, the mental restrictions found by the ALJ were essentially gratuitous.

The decision will be affirmed.

This the 14th day of March, 2007.



**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**